LANIER, Judge.
This case involves various disputes arising out of a residential construction contract. Suit was originally filed by Shellington Homes, Inc. seeking to recover the balance due on the contract. The defendant, Ra-ghunath P. Yadav, filed an answer and reconventional demand claiming construction defects and credits for unauthorized charges.
I. FACTS
After extensive negotiations, on July 13, 1976, Shellington Homes, Inc. entered into a cost plus 10% contract with Raghunath P. Yadav for the construction of his home located on lot 82 on Kenilworth Parkway Drive in Kenilworth Subdivision, Baton Rouge, Louisiana.[1] The anticipated construction period was 120 calendar days. However, due to multiple changes in plans and delays occasioned by both parties, construction was not completed until the latter part of April of 1977. During the course of construction and after completion of construction, substantial disputes developed between the parties and this suit followed.
The parties stipulated at the trial that the total cost of construction was $43,-424.29. The ten percent fee of Shellington was $4,342.43, for a total cost to Yadav of $47,766.72. It was stipulated that Yadav had made payments totaling $42,010.83 on the contract, leaving a balance of $5,755.89. Pursuant to the terms of the contract, the trial judge gave Yadav credits of $425.00 for workmen’s compensation insurance and $271.00 for general liability insurance. These sums were billed to Yadav, but Shell-ington was required to pay them under the terms of the agreement. In addition, Ya-dav was given a credit of $416.95 for one-half of the extra interim finance charges of $833.90 which he incurred because the construction time exceeded 135 days. The contract required that the builder and owner share the excess interim finance charges on a 50/50 basis. These credits total $1,112.95, and, when applied to the principal amount due, leave a balance of $4,642.94. The trial judge divided the cost equally between the parties. This suspensive appeal followed. The defendant does not contest the findings of the trial judge on the main demand and has limited this appeal to the ruling on the reconventional demand.
II. DEPARTURES FROM PLANS
The construction contract specifically provides that “Errors in construction due to improper construction or failure to properly interpret the plans and specifications are to be totally corrected at the expense of the builder.” This provision states the law applicable between these parties and this court is bound to give it effect. Article 1945 of the Louisiana Civil Code. Yadav claims that Shellington made three unauthorized departures from the building plans, namely: (1) the door to the hall bathroom; (2) the door between the dining room and kitchen; and (3) the concrete “riser” for the bookshelves in the family room. Yadav asserts that he is entitled to payment for the cost of correcting these mistakes.
A. The hall bathroom. Yadav maintains that the plans and specifications require a two foot six inch door leading into the hall bathroom. The door actually installed is only two feet wide and he claims this is very inconvenient. Yadav testified that he discussed this with Shellington and that Shellington agreed to fix it.
Shellington testified that the change in door size resulted from an error by the plumber in installing the plumbing for the hall bath lavatories. As soon as this problem was discovered, he notified Yadav. Shellington testified that after discussing the matter, Yadav agreed to move the wall and put in a two foot door instead of a two foot six inch door, since this was preferable to breaking up the slab and relocating the plumbing. Shellington’s version of this dispute is supported by the testimony of Johnny Mosby, a carpenter on the job who was involved in making the forms for the foundation of the building and the framing.
*534 B. The dining room-kitchen door. Ya-dav testified that the door between the dining room and kitchen was planned as a bi-fold door two feet wide. Shellington actually installed a solid two foot eight inch door. Yadav testified that Shellington agreed to fix this error, but never did.
Contrary to this, Shellington testified that he advised Yadav that a small door such as this in a high traffic area is not good in case of fire and that Yadav agreed to the change.
C. The concrete “riser” in the family room. Yadav testified that Shellington failed to properly follow the plans and specifications submitted to him and that the bookshelves and wet bar in the family room (den) are ten to twelve inches too high and not practical for everyday usage.
Shellington testified that the foundation for this room was laid out in accordance with the plans and specifications submitted to him. After the foundation had been laid, it was discovered that the foundation plans did not correspond with the floor plan furnished to him. The foundation plan that Shellington had did not accommodate the one foot “sunken” offset of the family room for the bookshelves. This difference caused the wet bar and the bookshelves to be located at a working height twelve inches higher than normal. Shellington testified that this discrepancy was brought to Yadav’s attention and that he agreed to proceed on that basis. Shellington’s version of what occurred is supported by Johnny Mosby who testified that it was he who discovered that the foundation plan did not match the floor plan while he was framing the building. He immediately brought this to Shelling-ton’s attention who notified Yadav. After some discussion, corrective work was done to the slab and Yadav agreed to proceed with that change.
In the report dated April 2, 1980, of Mr. J. David Brinson, an architect retained by Yadav to survey his home, appears the following observations concerning the problem with the concrete “riser” in the family room:
“Item # 2 — The concrete riser (raised concrete Platform) is built in accordance to the print Mr. Shellington produced, but is shown differently on Dr. Yadav’s tracing. None of the drawings is dated. There is no indication of revisions other than the indication that the tracings have at some point been revised. It appears to me that the drawing Shellington has was a print from the tracing before it was revised. It’s my opinion that there was a sequence of events early in the building process which resulted in the conflict. My comment related to that sequence follows these items.

“The most serious dispute appears to be with the raised concrete platform. The print Mr. Shellington has clearly indicates the platform. Dr. Yadav’s tracing clearly omits the platform. I suspect that the print Mr. Shellington has was issued before the tracing was revised and that he did not receive, or failed to obtain a revised print. Since there are no dates on any of the drawings or indications of revisions, it is impossible to determine from the documents the order of evolution. Perhaps it would be helpful to contact Bob Kiper who produced the plans. The drafting was done by Ron Martin, according to information on the drawings. This kind of situation can occur when prints are issued prematurely, not properly dated and end up being used as construction documents.”
Neither Kiper nor Martin was called by either side at the trial to attempt to explain this discrepancy.
Yadav did not secure the services of an architect to help in planning and building his home. Thus, it was he who was responsible for obtaining the building plans and submitting them to Shellington.
D.Conclusion. It is implicit in the trial judge’s ruling that he accepted Shelling-ton’s version of the facts concerning the above disputes and ruled that Yadav agreed to the departures from the plans and was precluded from reimbursement for the cost of corrective measures. Based on the evi *535 dence of record, this holding is not clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
III. THE FIREPLACE
The problem with the fireplace is described as follows by architect Brinson in his report of April 2, 1980:
“Air infiltration is clearly through the cracks in the brickwork and the openings where the wood trim adjoins the brick. Since the fireplace was changed to a metal unit instead of a masonry fireplace, the enclosure around the fireplace and flue is a void through which cold air passes and infiltrates the openings around the brick trim.”
At the trial Brinson testified that the air infiltration was caused by faulty construction in that there were cracks between the bricks and the finish materials and there was improper trim.
Shellington testified that the bricklayer who built the fireplace was selected by Ya-dav and was not the one that he wanted. He did not attempt to further explain or excuse the defects in the fireplace. It is our opinion that the trial judge was clearly wrong and committed error in not granting relief for this portion of the reconventional demand by Yadav. The fireplace is defective. Shellington is responsible for the cost of correcting this construction error by the terms of his contract. The cost of the fireplace repairs, totaling $925.00, is found under Items 4, 5, 6 and 7 of the estimate submitted by Brinson at the trial. The judgment of the trial court will be reversed insofar as it failed to grant the reconven-tional demand in this amount.
IV. CONCLUSION
Except for the cost of repairing the defectively constructed fireplace, the facts of record support the conclusions reached by the trial judge. The judgment of the trial court will be affirmed in all respects except that judgment will be granted on the recon-ventional demand in favor of Raghunath P. Yadav and against Shellington Homes, Inc. in the sum of $925.00, with legal interest thereon from January 2, 1980, until paid.
All costs in the trial court and in this court shall be equally divided between the parties.
JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.

. The contract is signed by John L. Shellington on behalf of Shellington Homes, Inc., but is not signed by Yadav. However, the parties agree that this contract is binding.